UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIDGET WATSON,                           Case No. 18-10689

                    Plaintiff,         Marianne O. Battani
v.                                        United States District Judge

COMMISSIONER OF SOCIAL                    Stephanie Dawkins Davis
SECURITY,                                 United States Magistrate Judge

              Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 12, 13)**

## I.    PROCEDURAL HISTORY

A.    Proceedings in this Court

On February 28, 2018, plaintiff Bridget Watson filed the instant suit.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Marianne O. Battani referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 12, 13).

B.   Administrative Proceedings

Watson filed an application for a period of disability, disability insurance benefits, and supplemental security income on July 14, 2014, alleging disability beginning on February 15, 2014.  (Tr. 15).[1]  The claims were initially disapproved by the Commissioner on March 10, 2015.  (Dkt. 73, Pg ID 129-142).  Watson requested a hearing and on January 18, 2017, plaintiff appeared with counsel, before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the case *de novo*.  (Tr. 15-26).  In a decision dated May 3, 2017, the ALJ found that plaintiff was not disabled.  (Tr. 25-26).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on February 6, 2018, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The Administrative Record appears on the docket at entry number 8.  All references to the same are identified as "Tr."

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Watson, born September 26, 1968, was 45 years old on the alleged disability onset date.  (Tr. 24).  She has a high school education and past relevant work as a cleaner.  (*Id.*).  She claims she cannot work because she injured her cervical and lumbar spine in a car accident in 2014.  Specifically, she says she has difficulty standing, walking, carrying, and lifting.  (Tr. 19).

In applying the five-step disability analysis the ALJ found at step one that Watson had not engaged in substantial gainful activity since February 15, 2014, the alleged onset date.  (Tr. 17).  At step two, the ALJ found that Watson's degenerative disc disease, carpal tunnel syndrome, and obesity were "severe" within the meaning of the second sequential step.  (*Id.*).  However, at step three, the ALJ found no evidence that her impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 18).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following additional limitations: the opportunity to alternate from sitting to standing, and from standing to sitting, for up to 5 minutes approximately every 30 minutes, provided she is not off task more than 10% of the work period; no

> climbing of ladders, ropes, or scaffolds; no crawling; occasional climbing of stairs, crouching, stooping, balancing, and kneeling; no overhead reaching, and no more than frequent reaching in other directions; frequent handling, fingering, and feeling; no work around hazards such as unprotected elevations or dangerous moving machinery; no exposure to vibration; and no use of foot or leg controls.

(Tr. 18).  At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  (Tr. 24).  At step five, the ALJ denied plaintiff benefits because she found that there were jobs that exist in significant numbers in the national economy that plaintiff can perform.  (Tr. 24-25).

B.  Plaintiff's Claims of Error

Watson raises one argument before the Court on appeal.  She argues that the ALJ improperly rejected her treating physician's opinion.  (Dkt. 12, at p. 9).  Watson's physician, Dr. Smith, completed a Physical RFC Questionnaire on May 28, 2015.  (*Id.* at p. 12).  In this opinion, Dr. Smith rendered Watson disabled.  For example, he opined that Watson is likely to be off task 25% of the workday, is incapable of even low stress jobs, and is likely to be absent from work four days per month.  He further opined that Watson could walk less than one city block without rest or severe pain, could sit for less than two hours in a workday, could stand/walk less than two hours in a workday, and would need unscheduled breaks, among other things.  (*Id.*).

According to Watson, the ALJ did not properly evaluate Dr. Smith's opinion under the treating physician rule.  The ALJ discounted Dr. Smith's opinion stating, "[t]he primary care physician identified extensive limitations that are inconsistent with the treatment history, the clinical findings, and the diagnostic test results discussed above."  (*Id.* at p. 11).  Watson contends that this statement is conclusory, is not supported by substantial evidence, and does not provide good reasons for the ALJ's weight determination.  In support of her contention that Dr. Smith's opinion is supported by substantial evidence, she recites portions of the medical record containing objective findings such as lumbar spondylosis and neural foraminal compromise at L4-L5 and L5-S1 (Tr. 368) along with reduced range of motion in the cervical and lumbar spine (Tr. 381-89), pain with extension of the lumbar spine, positive straight leg raise testing, positive Spurling test, and multiple trigger points about the thoracic and lumbar spine (Tr. 671).  (*Id.* at p. 13).

> C.    Commissioner's Motion for Summary Judgment

In contrast, the Commissioner argues that the ALJ properly accorded Dr. Smith's opinion little weight because the opinion was inconsistent with Watson's treatment history as well as the clinical findings and diagnostic test results in the record.  (Dkt. 13, at p. 6).

The Commissioner contends that the ALJ considered and assessed each medical opinion in the record, including the evidentiary support for the opinions

and their consistency with the record as a whole. (*Id.* at p. 7). After summarizing

Watson's allegations of disabling symptoms, the objective evidence of record, and

Dr. Smith's opinion, the ALJ assigned the opinion little weight. The

Commissioner contends that the ALJ's explanation for giving the opinion little

weight was adequate. The ALJ reasoned that the medical evidence documented

mild musculoskeletal findings and few neurological findings. Further, her treating

sources indicated the diagnostic testing showed minimal findings with no

indication for surgery, and plaintiff reported her injections and medications helped

reduce her pain. (*Id.* at p. 10; Tr. 24). In addition to this specific explanation,

according to the Commissioner, the ALJ discussed the record in the remainder of

the decision. The Commissioner contends that the ALJ's discussion of this

evidence within the decision provides good reasons for discounting Dr. Smith's

opinion that are not conclusory. (*Id.* at p. 15-16). Further, in line with the good

reasons requirement, the ALJ noted the frequency of Dr. Smith's treatment, the

fact that he was her primary care physician, and the fact that his opinion was

inconsistent with the treatment records, clinical findings, and diagnostic test

results. (*Id.* at p. 16). Thus, the Commissioner insists there was no error.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health

& Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals

and the district court may look to any evidence in the record, regardless of whether

it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245

F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the

ALJ or the reviewing court discuss every piece of evidence in the administrative

record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)

("[a]n ALJ can consider all the evidence without directly addressing in his written

decision every piece of evidence submitted by a party.") (internal citation marks

omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526

(6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).  If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court

would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.

      C.    <u>Analysis and Conclusions</u>

          1.    Legal Standard – Treating Physician Rule

The opinion of a treating physician should be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). Once an ALJ has determined that a treating source opinion is not entitled to controlling weight, the ALJ must give good reasons for the weight accorded to the opinion. The reasons provided must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The ALJ is to discuss certain factors, which include, (1) the length of the treatment relationship and frequency of examination, (2) the nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, and (5) the specialization of the treating source. *Id.; see also Wilson,* 378 F.3d at 544; 20

C.F.R. § 404.1527(c).  Failure to analyze a treating source opinion under the two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight.  *Gayheart* at 376-77.

### 2.    Discussion

In the view of the undersigned, the ALJ did not err in discounting Dr. Smith's opinion in accordance with the treating physician rule.  In evaluating Dr. Smith's opinion, the ALJ said the following:

> Garrett Smith, M.D., the claimant's primary care physician, completed a medical source statement dated May 28, 2015.  Dr. Smith treated the claimant once a month for diagnoses of degenerative disc disease and sciatica with low back pain and cervical pain.  The doctor stated that the claimant's prognosis was poor due to progressive disease.  Dr. Smith stated that the claimant demonstrated cervical and lumbar spine tenderness at multiple levels and that she walked with a limp.  Dr. Smith opined that the claimant was likely to be off task for 25 percent or more of a typical workday because her symptoms would be severe enough to interfere with attention and concentration; was incapable of even "low stress" jobs; could walk less than one block; could sit for 30 minutes at a time and for less than 2 hours total in an 8-hour workday; could stand for 5 minutes at a time and for less than 2 hours total in an 8-hour workday; needed to walk for 5 minutes after every 30 minutes; needed a job that permitted shifting positions at will from sitting, standing, or walking; needed to take unscheduled breaks of 20 to 30 minutes after every 30 minutes during an 8-hour workday; needed to elevate her legs approximately 3 feet for 30 percent of an 8-hour workday; did not require the use of a cane or other assistive device; could rarely lift and carry less than 10 pounds; could occasionally look down, turn her head right or left, look

up, hold her head in a static position, stoop, or bend;
could rarely crouch, squat, or climb stairs; could never
twist or climb ladders; could only perform bilateral
handling for 5 percent of an 8-hour workday; and was
likely to be absent from work more than 4 days per
month due to her impairments or treatment (Exhibit 13F).

The undersigned assigns little weight to the opinion of
Dr. Smith regarding the claimant's physical ability to
perform basic work activities.  The primary care
physician identified extensive limitations that are
inconsistent with the treatment history, the clinical
findings, and the diagnostic test results discussed above.

(Tr. 22-23).  Prior to weighing Dr. Smith's opinion, the ALJ spent two pages

thoroughly reviewing the medical evidence in the record.  (Tr. 20-22).  The ALJ's

review of the evidence supports the decision to give the opinion little weight

because the opinion is inconsistent with Watson's treatment history, clinical

findings, and diagnostic test results.

The undersigned notes at the outset that it is proper to read the ALJ's

decision as whole.  *See Athey v. Comm'r of Soc. Sec.*, 2014 WL 4537317 at *4

(E.D. Mich. 2014); *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t

is proper to read the ALJ's decision as a whole . . . it would be a needless formality

to have the ALJ repeat substantially similar factual analyses" in different parts of

the decision").  According to the record, Watson started having pain in her cervical

and lumbar spine after she was involved in a car accident in February 2014.  While

she continued to report pain—sometimes severe pain—objective testing did not

reveal disabling impairment.  On the day of the accident (but shortly after), February 15, 2014, Watson underwent a scan of her spine.  Both the cervical and lumbar CT scans were normal.  (Tr. 394, 397).  Roughly two months later, in April 2014, she underwent an MRI of the cervical spine, which revealed no evidence of an acute fracture or injury to the cervical spine but did reveal cervical spondylosis resulting in neural foraminal compromise.  (Tr. 366).  A lumbar MRI that same day revealed spondylosis and discopathy resulting in neural foraminal compromise at L4-5 and L5-S1.  (Tr. 368).  About a year later in April 2015 she underwent another round of MRIs.  The MRI of the lumbar spine showed that the lumbar vertebrae were normal in signal and in height.  (Tr. 891).  The MRI also indicated that there was mild disc dehydration at L5-S1, but normal disc space and height, disc herniation, and facet arthropathy.  She was assessed with disc herniation and facet hypertrophy at L5-S1.  (*Id.*).  The MRI of the cervical spine revealed that the cervical vertebrae were normal in signal and height but noted a 2mm disc bulge at C3-4 and C4-5.  (Tr. 892).  In December 2015 and January 2016 Watson's pain management doctor reviewed the April 2015 MRI results and stated that they show "only very minimal, almost normal, anatomy of both cervical and lumbar spine," (Tr. 699), and also observed that the MRI of her lumbar spine was normal with the exception of a "3mm bulge between L5 and S1."  (Tr. 693).  In January 2016 she underwent another MRI which showed no significant change from the April 2015

MRIs. (Tr. 703). Further, a June 2014 EMG (four months post-disability onset date) test revealed no evidence of radiculopathy at C5-T1 or L4-S1 levels. (Tr. 571). There was also no evidence of more diffuse peripheral neuropathy or myopathy involving the upper or lower extremities bilaterally. (*Id.*). These objective tests as well as the medical interpretation of the MRIs do not suggest that Watson is disabled. Thus, the ALJ's determination that Dr. Smith's opinion that Watson is disabled is inconsistent with clinical findings and diagnostic test results is supported by substantial evidence.

Further, while Watson complained of severe pain, she often reported pain management with her medication and injections. Watson began treating with Insight Institute of Neurosurgery and Neuroscience pain management clinic in November 2015. (Tr. 701). That month, she reported that her pain was 10/10 but that she had about 40% improvement in her pain from her medications. (*Id.*). Dr. Shah recommended physical therapy three times per week for her cervical and lumbar spine for one month. (*Id.*). Dr. Shah did not feel that Watson was a strong candidate for back surgery. (Tr. 699). In December 2015 she reported that her neck pain intensity was 5/10 but with prolonged standing it would go up to 7/10. (Tr. 699). She underwent steroid injections with little relief but reported in January 2016 that her pain was on average a 6/10 with her current medication. (Tr. 693). She also denied focal neurological deficits and gait abnormality. (*Id.*). In March

2016 she reported "significant relief of activities of daily living with her current medication management." (Tr. 688). By April 21, 2016, Watson reported that the combination of her medication and the injections "help[ed] with her activities of daily living and functionality tremendously," (Tr. 683), and in May and June 2016 her pain was stable and unchanged (Tr. 681, 679), but in June she thought her pain was starting to return to previous levels. However, her pain was still stable and unchanged, and she continued to benefit functionally from her medications, in August 2016. (Tr. 674). Further, she reported to a primary care physician in June 2016 that her pain had improved in intensity and she was having pain less frequently. (Tr. 710). In September 2016, she was again reporting severe pain at 7/10 when on Norco, but she reported that the medication wears off quickly. (Tr. 671). In October 2016, while Watson reported continuing pain, her pain management clinician noted that there were no new changes at that time and that she was stable on her current pain medications. (Tr. 666). Her doctor prescribed Motrin 600 in addition to her Norco and advised exercise and stretching as tolerated. (*Id.*). Thus, although Watson experienced pain in her back, clinical records demonstrate that she experienced some degree of pain control or that her pain was managed and stable with medication and injections, which supports the ALJ's determination that Dr. Smith's opinion rendering her disabled was inconsistent with the clinical records.

Dr. Smith's opinion is also inconsistent with some of the opinions or statements from other physicians. The State agency physician, Dr. VanderHaagen, issued a reviewing opinion on March 20, 2015, two months before Dr. Smith issued his opinion in May 2015. (Tr. 89). Dr. VanderHaagen had some of Dr. Smith's treatment records (records from Michigan Health Care) before him when he issued his opinion. (Tr. 82-83). Dr. VanderHaagen opined that Watson was capable of light work based on evidence such as normal gait, normal joints, Watson's ability to shop and perform self-care independently, and her continued improvement since the car accident. (Tr. 86). Further, consultative examiner Dr. Sayyid opined in February 2015 that Watson could engage in a myriad of physical activities. (Tr. 555-58). The ALJ gave Dr. Sayyid's opinion limiting Watson to carrying, pushing or pulling less than 10 pounds little weight because the ALJ stated that it was not supported by the objective medical evidence. Aside from the lifting restriction, it does not appear that Dr. Sayyid's opinion would render Watson more limited than stated in the RFC. Additionally, Dr. Smith's opinion is inconsistent with treatment notes from other physicians. For example, in June 2016, her primary care physician noted that Watson had no focal neurological deficits, had strength 5/5 in bilateral upper and lower extremities, and grossly intact sensory exam. (Tr. 709). As stated above, her physician further stated that her pain improved in intensity and that she was having pain less frequently. (Tr.

710).  This physician did not indicate any functional limitations.  And, again, Dr.

Shah examined Watson and determined that she was not a surgical candidate

despite her back impairments; instead, he recommended physical therapy and did

not suggest that she limit any of her daily activities.  (Tr. 699).  Watson also treated

with Dr. Rao, who administered a lumbar medial branch block which worked well

to relieve her pain but only lasted a short time.  (Tr. 442).  Dr. Rao apparently

sought to address the concern about the short-duration of the relief by

recommending and then administering radiofrequency ablations, an approach that

was recorded as "successful."  (Tr. 449, 452).  Notably, the record does not reflect

that Dr. Rao advised Watson to limit any of her activities in light of her back

impairments.

The ALJ discussed much of this evidence.  Having done so, the ALJ both

explained the reason for giving Dr. Smith's opinion less than controlling weight

(i.e. by pointing out the inconsistency between the opinion and other evidence in

the record) and addressed two of the "good reasons" factors: the supportability of

the opinion and consistency of the opinion with the record.  (*See Gayheart*, *supra*).

The ALJ also addressed the treating relationship between Watson and Dr. Smith,

and in what specialty Dr. Smith practices.  (Tr. 22).  It appears that the ALJ's

reference to Dr. Smith as Watson's primary care physician was a mistake, [2] as the hearing testimony revealed that Dr. Smith was Watson's pain management doctor until July 2015.  Despite this mistake, the ALJ did address the treating relationship and other factors that are to be considered when evaluating a treating physician's opinion.  Any articulation error is harmless.  As the Sixth Circuit held in *Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 805 (6th Cir. 2011) (quoting Friend v. Comm'r of Soc. Sec., 375 Fed. Appx. 543, 551 (6th Cir. 2010)), the treating physician rule is not "a procrustean bed, requiring an arbitrary conformity at all times."  In *Francis*, the ALJ did not discuss several of the factors set out in 20 C.F.R. § 404.1527(d)(2), but the court held that he did not have to do an exhaustive factor-by-factor analysis.  *Id*. at 804-05.  As long as the goal of the regulation is met, i.e. providing a clear understanding of the reasons for the weight given to a treating physician's opinion, any procedural error will be harmless.  As demonstrated above, the goal of the regulation has been met here.  The reasons for giving Dr. Smith's opinion little weight are sufficiently clear.

Watson's contention that there is evidence supporting Dr. Smith's opinion does not diminish the substantial evidence in support of the ALJ's weight

---

[2] During the administrative hearing the ALJ took time to try to parse out whether Dr. Smith was Watson's primary care physician or pain management doctor.  The end result is that Dr. Smith was her pain management physician before changing clinics to Insight in November 2015.  (Tr. 47-48).  Dr. Smith is not her primary care doctor.  Plaintiff does not raise this issue in her brief.

determination.  For example, Watson points to her April 2015 MRI which showed

bulging and herniated discs.  (Dkt. 12, at p. 13, Tr. 891-893).  However, as

discussed above, her pain management physician reviewed the April 2015 MRIs

and determined that they were largely normal.  Watson also points to the fact that

she was treated with spinal injections and that she had noted tenderness around her

spine.  (*Id.*).  The ALJ addressed all this evidence, and, in light of the other

evidence in the record, concluded that Dr. Smith's opinion was entitled to little

weight.  Moreover, even if there is substantial evidence in support of Dr. Smith's

opinion, the decision must be affirmed because there is also substantial evidence in

support of the ALJ's weight determination.  As noted earlier, this Court may not

reverse the Commissioner's decision merely because it disagrees or because "there

exists in the record substantial evidence to support a different conclusion."

*McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v.*

*Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is

"more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence

standard Presupposes that there is a 'zone of choice' within which the

Commissioner may proceed without interference from the courts."  *Felisky v.*

*Bowen* 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800

F.2d at 545).  The undersigned finds that the ALJ's decision here is within that zone of choice.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 25, 2019
s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge